**Betty V. DAVIDSON, Plaintiff,**

v.

**Carmel CICUTO, Administratrix of the Estate of Anthony Leroy Cicuto, Deceased, Defendant.**

**Otha SIMONS, Jr., Plaintiff,**

v.

**Carmel CICUTO, Administratrix of the Estate of Anthony Leroy Cicuto, Deceased, Defendant.**

**Dana MILLER, a minor, by his parent and natural guardian, Betty V. Davidson, and Betty V. Davidson, in her own right, Plaintiffs,**

v.

**Carmel CICUTO, Administratrix of the Estate of Anthony Leroy Cicuto, Deceased, Defendant.**

Civ. A. Nos. 60-783—60-785.

United States District Court
W. D. Pennsylvania.

April 6, 1962.

McArdle Harrington & McLaughlin, Pittsburgh, Pa., for plaintiffs.

Pringle, Bredin & Martin, Pittsburgh, Pa., for defendant.

GOURLEY, Chief Judge.

These are three consolidated non-jury actions based upon claims for personal injuries arising out of an automobile collision.

The undisputed facts establish a collision which occurred between vehicles proceeding from opposite directions on a three-lane highway. Plaintiff, Otha Simons, Jr., was the operator of one vehicle which carried as guest passengers and plaintiffs in this proceeding, Betty Davidson and Dana Miller, a minor. The deceased defendant was the operator of the other vehicle in the collision.

The collision occurred in the vicinity of New Castle, Pennsylvania, U. S. Route 422, where it is divided into a three-lane highway. As a result of the accident, each of the plaintiffs were injured and the defendant operator was killed.

■ After a most careful evaluation and consideration of all the evidence, oral and documentary, it is my considered judgment, taking into account the presumption of freedom from fault which exists on the part of the deceased defendant, that said defendant was guilty of negligence which was the proximate cause and a substantial contributing factor in bringing about the accident and that none of the plaintiffs were guilty of contributory negligence.

I am impelled to further conclude that the deceased defendant was rational and alive at the time of the accident and that he met his death as a result of the accident and was not in extremis or dying immediately before or at the time of the accident.

As a result of the accident, each of the plaintiffs sustained considerable expenses, most extensive pain, suffering and inconvenience, while plaintiff Betty Davidson sustained the additional element of impaired earning power.

## DAMAGES SUSTAINED BY BETTY DAVIDSON

■ Betty Davidson secured a high school education and in addition to her aptitude to perform clerical work, managed a dance studio and entertained both as a singer and dancer. She possessed unusual charm.

As a result of the accident she suffered a most severe deformity of her right eye which causes double vision and materially affects her charm and beauty. This condition precipitated such despondency that on one occasion she attempted suicide. She is rendered unable to follow her profession as a dancer and entertainer and, as a consequence to the permanent condition of double vision, she is unable to pursue employment in her training for office work, bookkeeping and limited accounting.

It is my judgment that an award for pain, suffering and inconvenience, past, present and future, together with impairment of earning power, should be in the amount of $100,000.00.

In addition, Betty Davidson is responsible for the expenses of her son of a previous marriage, Dana Miller, which expenses were a proximate result of the injury sustained by the son, an additional award will be made in her favor in the amount of $1,829.49.

## DAMAGES SUSTAINED BY DANA MILLER, A MINOR

■ Dana Miller, age fourteen at the time of the accident, sustained a fracture to his right leg, injuries to his left arm and hand causing him to lose sensation in the small finger of the left hand. With the exception of scars which mark him in various places on his body, he has made a satisfactory recovery from all other injuries and no sound basis exists to conclude that he has suffered an impairment of earning power. An award of $20,000.00 would compensate him for the injuries incurred.

## DAMAGES SUSTAINED BY OTHA SIMONS, JR.

■ Otha Simons, Jr., sustained a fracture of the right arm, injuries to the right little finger, severe bruises of both knees and of the side of his temple. Based upon his loss of wages and the nature of his injuries, it is my judgment that an award in the amount of $20,000.00 would be consistent with the degree of injury evinced in the record.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### FINDINGS OF FACT

1. All of the plaintiffs are citizens of the Commonwealth of Pennsylvania residing in the Western District of Pennsylvania and the defendant is a citizen of the State of Ohio.

2. On July 16, 1960, at approximately 3:30 p. m., Betty Davidson and Dana

Miller were passengers in an automobile being driven by Otha Simons which automobile was proceeding westwardly on U. S. Route 422 toward Youngstown, Ohio. An accident occurred between this automobile and an automobile that was owned by Anthony Cicuto. The automobile of Anthony L. Cicuto, deceased, was proceeding in an easterly direction on Route 422.

3. In the afternoon of July 16, 1960, Anthony Cicuto stopped at the King's Inn where he was served either two double shots of whiskey or one double shot of whiskey and a bottle of beer. At that time Anthony Cicuto appeared to be in an intoxicated condition and the bartender refused to serve him anything more. Cicuto staggered, acted strange, his face was flushed and he was making funny faces. Shortly thereafter, Cicuto left the tavern.

4. At that time Carl Lepisto and his wife, Laila, were in their automobile proceeding down route 422 in an easterly direction toward New Castle, Pennsylvania.

5. It was a bright, clear day and the roadway was dry.

6. The road between King's Inn and the scene of the accident is a three-lane highway.

7. As the Lepisto car approached the King's Inn, Carl Lepisto and his wife saw Anthony Cicuto in his car waiting to pull onto the highway. They wondered why he did not pull out since there was considerable distance between them. As they came closer, to within about 55 feet, Cicuto suddenly pulled out onto the highway in front of them.

8. The Cicuto car began to weave from the right-hand, or eastbound lane of the traffic, to the center lane and back again. The weaving continued steadily up to the time the accident happened. This would involve a distance of one or two miles and three to five minutes in time.

9. At the scene of the accident the Cicuto car was seen to weave from the eastbound lane over the center lane and onto the westbound lane of traffic. The car then proceeded down the westerly lane of traffic and the left two wheels of the car were on the berm, the right two wheels being on the highway. At this time the car in which the plaintiffs were riding was proceeding down the westerly lane of traffic and when the driver, Otha Simons, saw the Cicuto car coming toward him in the westerly lane of traffic, Simons endeavored to cut over into the center lane. At this point, the Cicuto car turned suddenly to its right or in a southerly direction and came across the westbound lane of traffic and ran into and collided with the car in which the plaintiffs were traveling at a point between the westbound lane of traffic and the center lane of traffic.

10. Anthony Cicuto died as a result of this accident and an autopsy was performed on him at the request of the deputy coroner at the Jameson Memorial Hospital, New Castle, Pennsylvania.

11. Anthony Cicuto was alive at the time the collision occurred and he died as a result of injuries received in the accident which caused his heart to go into a fatal rhythm after the shock of the impact and the gross injuries that he experienced.

12. Otha Simons, Jr., was born on May 5, 1929, and at the time of the accident here involved was 31 years of age. As a result of this accident he sustained a fracture of the right ulna, the fingernail was torn from the right little finger, both knees were bruised, he received a bruise to the right side of his temple and a black eye. His arm was in a cast for two and one-half months and after the cast was removed he was unable to use his arm in a normal manner for an additional three months. He could not lift objects, could not drive and could not write until January of 1961. He was released by his physician to return to work on January 3, 1961.

13. By virtue of the accident, Otha Simons was obliged to lose twenty-two weeks of work and at the time of the accident he was working for the Pullman Standard Car Company in Butler, Pennsylvania, as a crane operator and he would have been able to earn $155.00 a week.

14. At the present time Otha Simons is still troubled with his arm and is not able to use it as he did before the accident. Weather changes cause it to ache. He does not have the strength in his right hand to do the work that he did before. His knees bother him if he is on them for any length of time, but this happens rarely. The bill of Dr. Ralph Markley for his treatment of Otha Simons is in the sum of $110.00 and the hospital bill is in the sum of $37.00. In addition, he was obliged to pay the sum of $20.00 for ambulance service to the hospital.

15. Dana Ray Miller was born on July 30, 1946, and was at the time of this accident fourteen years of age. He is the son of Betty Davidson. After this accident he was taken to the Jameson Memorial Hospital in New Castle where he was a patient between July 16, 1960, and August 10, 1960. After leaving the hospital he was bedfast for approximately three months and then was allowed to get out of bed and move about on crutches which he used for approximately six months until April of 1961. He then was able to move around through the use of a cane which he used for an additional month until the end of May, 1961. He was readmitted to the Jameson Memorial Hospital on July 27, 1961, for the removal of a pin and he remained a patient there until July 30, 1961.

16. As a result of this accident Dana Miller sustained a severe laceration of the right thigh and a large laceration on the left forearm. He also sustained a fracture of the right femur which was a comminuted fracture requiring an open reduction and the insertion of an intermedullary nail. He also sustained contusions of the face and eye. The intermedullary steel nail was removed from the femur on July 27, 1961. He also sustained a fracture of the olecranon process of the left ulna and developed a numbness in the small finger of the left hand which resulted from lacerations of sensory nerves which go to that finger and which will be a permanent condition. The sensitivity in the scar on his right leg will be a permanent condition.

17. The right leg of Dana Miller was continuously in traction between July 16, 1960, and July 27, 1960, when the open reduction was performed. He received shots for pain and his leg was extremely sensitive.

18. At the present time the left hand of Dana Miller gets very cold during cold weather and more so than his right hand, and his little finger on the left hand is numb. The right side of his thigh aches and he finds that his right leg hurts when he jumps and that he cannot run like he used to nor can he participate in sports as he was able to before the accident. His knees hurt when he kneels down on anything. He has a four-inch scar on his right knee and there is a large scar on his right thigh which is the situs of the open reduction. In addition, he has a three-inch scar on his right hip and a two and one-half inch scar on the inside of the left arm, a four-inch scar on the other side of the arm and a two-inch scar along the left elbow. There is a two-inch scar on the right elbow and a half-inch scar in the middle of his chest and a scar on his ear. The scar on the right thigh is approximately six inches in length. Dana Miller does not have a good grip in his left hand and feels as though he has no strength in it.

19. The bill of the Jameson Memorial Hospital for the admission of July 16, 1960, is in the sum of $862.99 and the bill of the same hospital for the admission of July 27, 1961, is in the sum of $97.50. The bill of Dr. Ralph Markley is in the sum of $630.00, that of Dr. Allen is in the sum of $90.00 and the bill of Dr. Henderson is in the amount of $149.-00. All of these physicians were treating doctors and their bills are fair and reasonable.

20. Betty Davidson was born on July 27, 1927, and at the time of the happening of the accident here involved was thirty-three years of age.

21. Betty Davidson was admitted to the Youngstown Hospital on July 16, 1960.

22. She was attended by, among others, a neuro-surgeon, Dr. Oscar A. Turner. She was found to have the following injuries:

(a) Laceration of the urinary tract which healed by August 10, 1960.

(b) Cerebral hemorrhage and fractured skull.

(c) Fracture of the posterior part of the first cervical vertebrae. This has healed with no residual findings.

(d) Paralysis of the third nerve in the right eye. This is a permanent condition.

23. The third nerve is a nerve which comes directly from the brain and controls the eye movements, the size of the pupil and movements of the upper lid. This nerve is one of three which control the six muscles in the eye and it controls the largest number of these muscles. The effect of the paralysis of this nerve in this instance is to cause the right eye to be rotated outward, the eye cannot be turned inward, and when she tries to look forward the eye is directed outward and downward. This results in both double vision and blurred vision.

24. In addition, the right eyelid is drooped.

25. The right eye cannot be rotated inwardly nor upward.

26. Betty Davidson sees two images on almost all directions of gaze, this being more severe on looking to the right.

27. In addition to the medical aspect of this condition it also presents a serious cosmetic effect.

28. This condition is permanent.

29. All of the injuries diagnosed by Dr. Turner were caused by this accident.

30. Betty Davidson was also treated by Dr. George W. Cook, an orthopedic surgeon. He first examined her at the Youngstown Hospital on July 17, 1960. He diagnosed the following injuries:

(a) Multiple abrasions above and below the right knee and the calf of the left leg.

(b) Laceration of the right forearm.

(c) Fracture of the left symphasis in the front of the pelvis.

(d) Fractures on the right side of the pelvis of both the inferior and superior ramus.

(e) Fracture through the sacrum and illium.

31. In treating these injuries Dr. Cook required her to be down in bed flat between July 17, 1960 and August 5, 1960 when she was allowed to sit up in bed. She was allowed to move about on crutches beginning August 26, 1960.

32. She was discharged from the Youngstown Hospital on August 14, 1960.

33. Betty Davidson is presently suffering from coccygodynia.

34. Betty Davidson was admitted to the Butler County Memorial Hospital on September 3, 1960, where she remained a patient until September 15, 1960. She was treated there by Drs. Robert L. Eisler, a psychiatrist, and Edward C. Lutton, a general surgeon.

35. Dr. Lutton treated a large fungating ulcer on the back of the left leg where the skin had been torn off in this accident and failed to heal. The wound was about four inches in diameter and one-half inch deep. The ulcer was excised and a skin graft applied. The operation left a permanent large scar and depression in the left calf.

36. Dr. Eisler attended Betty Davidson because of the fact that on admission to the hospital she was in a semi-comatose state following the ingestion of thirty barbiturate tablets. He diagnosed her condition as a reactive depression which is a feeling of worthlessness, a feeling of loss and a feeling of hopelessness, a loss of the way she thought of herself and of her appearance. The accident and the injuries she received were the causes of the development of the depression. She was treated with stimulants, anti-depressant drugs and psychotherapy.

37. Because of this accident and the resulting injuries there is an increased

susceptibility to future depressive states. The lack of function of the right eye, the cosmetic effect, and the cosmetic effect of the scar on the left calf constitute an additional emotional burden which Betty Davidson will have to carry permanently.

38. Betty Davidson sustained the following bills which are fair and reasonable:

| | | |
|---|---|---|
| (a) Dr. Turner | $ 175.00 | |
| (b) Youngstown Hospital | 1,236.58 | (X-ray bill of $10.00) |
| (c) Dr. Geordan | 175.00 | |
| (d) Dr. Cook | 125.00 | |
| (e) Dr. Eisler | 120.00 | |
| (f) Dr. Lutton | 159.00 | |
| (g) Butler County Memorial Hospital | 329.10 | |

39. After Betty Davidson left the Youngstown Hospital she was bedfast at home for two weeks. Shortly thereafter she was admitted to the Butler County Memorial Hospital from which she was discharged on September 15, 1960. She was obliged to use crutches for approximately three months thereafter. Her right eye gives her difficulty even in such elementary matters as pouring coffee into several cups at which time she never knows into which cup she is pouring the coffee. On occasion, her right leg bothers her with pain going from her hip down to her foot after she has been standing or trying to move around extensively. She suffers considerable pain at the end of her spine.

40. Betty Davidson has had a varied employment career. She was graduated from high school in 1945 and went to work for the social security administration in Baltimore, Maryland, after having passed a civil service examination. She was at that time paid the sum of $40.00 per week and she worked at this job for approximately six months.

41. Betty Davidson then worked for the Keystone Pipe & Supply Company doing general office work and was paid the sum of $40.00 per week. This continued until 1947.

42. Beginning in July of 1947 she worked for the Sheffler Dance Studio as a dancing teacher and she later managed the dance studio. During this time she earned $40.00 per week and this employment continued from July of 1947 to January of 1949.

43. Between January of 1949 and 1951 she performed ballroom dancing, adagio and interpretive dancing with an organization under the name of Dannie Rogers. She entertained in night clubs and earned the sum of $100.00 per week.

44. In 1951 she worked at the Kraft Plating Mill performing general office work and was paid $40.00 per week and expenses. This continued into 1952.

45. Beginning in 1952 she performed bookkeeping and accounting work for Joseph F. Gillotte and again earned $40.00 per week. She has worked periodically for him since 1952.

46. Between 1954 and 1960 she was married but was divorced in 1960. During this period of time she and her husband purchased a business known as Wolfe's Pharmacy, Butler, Pennsylvania, where she worked as a clerk, kept books and did the buying for the store. At that time she and her husband together drew $100.00 a week, until 1959.

47. At the present time Betty Davidson cannot do the accounting and book-

keeping work in view of her visual defect.

48. If Betty Davidson were able, employment would be available for her at the social security offices in Butler, Pennsylvania, with a beginning salary of $4,-200.00.

49. In addition, Betty Davidson would have been able to secure a position as a singer at the Clinton Hotel in Butler at which she could earn the sum of $50.00 per week, but which she is unable to take because of her physical condition.

50. Betty Davidson has been unable to secure bookkeeping accounts of her own from each of which she could earn $35.00 to $40.00 per month per account and were she able she would be able to secure accounts from Snyder's Storm Window Company, The Alhambra, The Lindora Garage, the Butler Beauty School, and for a Mr. Mellick in Butler, Pennsylvania. She could secure additional accounts were she able to do the work.

51. Betty Davidson has had to expend for nursing care the sum of $252.00 and $20.00 for ambulance service to the hospital.

52. Betty Davidson has a life expectancy at the present time of between 41.3 years and 46.1 years.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction of the within action.

2. The defendant's decedent, Anthony Leroy Cicuto, was negligent and this negligence was the sole, proximate cause of the accident.

3. The plaintiffs were not contributorily negligent.

4. Each of the plaintiffs is entitled to a verdict.

An appropriate order is entered.